## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**REBECA RODRIGUEZ,**

        **Plaintiff,**

**v.**                               **Case No.**

**USAA FEDERAL SAVINGS BANK,**
**a foreign company,**

        **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, REBECA RODRIGUEZ ("Plaintiff"), hereby sues Defendant, USAA FEDERAL SAVINGS BANK, a foreign company ("Defendant" or "USAA"), and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages for violations of the Family and Medical Leave Act of 1993 ("FMLA").

2.    Subject matter jurisdiction over this action is based upon existence of a federal question based on FMLA claims which arise under federal law. The federal statute conferring original subject matter jurisdiction over this action is 29 U.S.C. § 1331.

3.    Defendant is subject to general and specific personal jurisdiction in

this Court under Section 48.193, Florida Statutes. Plaintiff's causes of action arose from Defendant's employment of Plaintiff in the State of Florida.

4.    Plaintiff has satisfied all conditions precedent to maintain this action.

## PARTIES

5.    Plaintiff was a resident of Hillsborough County, Florida at all times material hereto and reported to Defendant's business office in Hillsborough County.

6.    At all times material Plaintiff was a covered "employee" within the meaning of the FMLA and Defendant was a covered employer.

7.    Defendant is registered and headquartered in Texas and doing business in Hillsborough County, Florida.

## FACTUAL BACKGROUND

8.    Plaintiff was employed by Defendant as a Know Your Customer ("KYC") Compliance Analyst ("Analyst") beginning in or around May 2022.

9.    As an Analyst, Plaintiff's responsibilities included analyzing anti-money laundering ("AML") alerts.

10.    When Plaintiff first began working for Defendant, she and Defendant's other Analysts were expected to fully review at least one alert every day.

11.    In or around early 2024, Defendant began expecting its Analysts to fully review approximately three to five alerts daily.

12.    Most, if not all, of Defendant's Analysts in Plaintiff's office felt overworked trying to adhere to Defendant's alert review expectations, often working into the night and/or on weekends.

13.    If all files in an alert are ready to be reviewed, an Analyst can expect to spend anywhere between two to five hours reviewing the alert.

14.    Between October 2024 and December 2024, no files in any alert were ready to be reviewed at the time they were first presented to the Analysts and the Analysts had to prepare the files themselves.

15.    An Analyst could expect to spend approximately 30 minutes preparing one file out of several in an alert.

16.    At the start of every workday, Defendant's Analysts were required to search for any managers' review, quality assurance, and/or quality control updates, with each update taking anywhere between 20 minutes and two hours depending on the complexity of the update.

17.    Plaintiff's team of Analysts had multiple meetings every day, lasting anywhere between 15 minutes to over an hour.

18.    Plaintiff suffers from debilitating migraines and anxiety.

19.    Plaintiff received approval from Defendant to take intermittent

FMLA leave consisting of: one day per migraine episode, two episodes per week for incapacity, and three doctor visits per week.

20.    When granted FMLA leave, Plaintiff would often use it to go to a doctors appointment either in Hillsborough County or to a specialist in Jacksonville, Florida. Appointments in Jacksonville, Florida required a full day of leave to account for the time spent traveling between the appointment and Plaintiff's residence.

21.    Defendant only approved Plaintiff's intermittent leave during workdays in two hour increments, meaning if she had to step away for two hours and one minute, it was counted against her allotted leave time as four hours.

22.    For the months of November and December 2024, Defendant refused to allow Plaintiff to use her FMLA leave for doctors' appointments claiming that, as a new policy they were imposing on all employees, no one was being granted FMLA leave.

23.    Some Analysts in Plaintiff's office not using FMLA leave were still approved to take PTO during November and December 2024.

24.    By denying Plaintiff leave while she was suffering from debilitating migraines and anxiety, Defendant forced Plaintiff to work in an impaired condition, which decreased her efficiency.

25.    For the month of November 2024, Plaintiff reviewed 2.95 alerts per

day on average. In other words, if Plaintiff worked 20 full days and completed 59 alerts, she would average approximately 2.95 alerts daily.

26.    Defendant informed Plaintiff that if she was to fulfill its goal of a 3.3 average, that would consist of reviewing at least 66 alerts over a 20 day period.

27.    For the month of January 2025, now that the files in each alert were prepared for review, Plaintiff's daily average was between 3.05 and 3.10 while working at least 10 hours everyday.

28.    Defendant refused to adjust its performance expectations for Plaintiff to account for her FMLA-qualifying intermittent absences.

29.    Defendant's failure to adjust its expectations directly contravenes FMLA provisions prohibiting usage of Plaintiff's FMLA leave as a negative factor in its decision to terminate her employment.

30.    Defendant terminated Plaintiff's employment on or around January 23, 2025, while she was using her FMLA leave, on the grounds that she did not meet its statistical expectations.

31.    Defendant denied Plaintiff a benefit to which she was entitled when they terminated her, either in whole or in part, because of her taking FMLA-protected leave.

## COUNT I - FMLA INTERFERENCE

32.    Plaintiff realleges and readopts the allegations of paragraphs 1

through 31 as if fully set forth herein.

33.    Defendant expected Plaintiff to complete all the duties of a full-time employee while she was taking intermittent FMLA leave, and then fired her for failing to meet that full-time standard.

34.    Defendant's decision to terminate Plaintiff because of her failure to meet the full-time standard rendered her FMLA leave illusory.

35.    Defendant interfered with Plaintiff's right to leave under the FMLA.

36.    Defendant's actions were willful.

37.    Plaintiff was injured by Defendant's interference when she was discharged.

**WHEREFORE**, Plaintiff requests this Honorable Court to grant a judgment requiring Defendant to pay to Plaintiff lost-wages, liquidated damages, front-pay in an amount to be proved at trial, prejudgment interest thereon, and costs and attorney's fees under the FMLA.

## <u>COUNT II - FMLA RETALIATION</u>

38.    Plaintiff realleges and readopts the allegations of paragraphs 1 through 31 as if fully set forth herein.

39.    Defendant is an employer under the FMLA.

40.    Defendant retaliated against Plaintiff in violation of the FMLA by, among other things, refusing to adjust its performance expectations in light of

her approved intermittent FMLA leave.

41.    Plaintiff was injured by Defendant's actions, including discharge.

**WHEREFORE**, Plaintiff requests this Honorable Court to grant a judgment requiring Defendant to pay to Plaintiff lost-wages, liquidated damages, and front-pay in an amount to be determined at trial, prejudgment interest thereon, and costs and attorney's fees under the FMLA.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues.

Respectfully submitted,

*/s/ Craig L. Berman*
Craig L. Berman
Florida Bar No.: 068977
BERMAN LAW FIRM, P.A.
111 Second Avenue N.E, Suite 706
St. Petersburg, Florida 33701
Phone (727) 550-8989
Fax (727) 894-6251
craig@bermanlawpa.com

**COUNSEL FOR PLAINTIFF**